IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAY SANDON COOPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1778-N |
| | § | |
| DALLAS POLICE ASSOCIATION, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff Jay Sandon Cooper's ("Cooper") Motion for Partial

Summary Judgment [52] and Defendants Glenn White ("White") and the Dallas Police

Association's ("DPA") (collectively, "Defendants") Motion for Summary Judgment [39].

Because the Court finds that Cooper has failed to raise a genuine issue of material fact with

respect to each of his claims, the Court grants Defendants' motion to dismiss.[1]

### I. COOPER'S RELATIONSHIP WITH THE DPA

Cooper is a police officer with the Dallas Police Department and a member of the

DPA, a labor organization that represents the interests of Dallas police officers. Glenn White

has been the president of the DPA since 1994.

In 2004, Cooper aided two fellow police officers in presenting their complaints of

racial discrimination against the DPA. Cooper first submitted an affidavit to the Texas

---

[1]The Court grants Cooper's motion for leave to supplement [67].

ORDER – PAGE 1

Commission on Human Rights in support Harold Cornish's claim of racial discrimination against the DPA. Later that same year, Cooper submitted a letter to President White complaining of discriminatory acts carried out against Teresa Ward Cooper and he assisted her in presenting her claim of gender and disability discrimination to the EEOC.

Cooper alleges that following his support of Harold Cornish and Teresa Ward Cooper's discrimination complaints, the DPA retaliated against him by engaging in a "smear campaign" designed to thwart Cooper's efforts for advancement in his career. Specifically, Cooper claims that Chief of Police David M. Kunkle's decision not to promote Cooper to the positions of Assistant Chief or Deputy Chief in November and December of 2004 directly resulted from the DPA's retaliation against Cooper. Cooper asserts a claim of unlawful retaliation against White and the DPA based on the fact that Chief Kunkle did not appoint him to either position. Furthermore, Cooper also asserts a claim of racial discrimination against White and the DPA, alleging that the DPA engaged in a "pattern and practice of discrimination against him based on his race: Caucasian (White)." Compl. at 2, ¶ 5. Defendants now move for summary judgment on all of Cooper's claims.

## II. SUMMARY JUDGMENT STANDARD & COOPER'S BURDEN OF PROOF

Federal Rule of Civil Procedure 56(c) provides that the party moving for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988). In the summary judgment context, the Court is to accept the nonmovant's evidence and draw all

justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Additionally, the Court must follow the burden-shifting analysis presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies to Title VII race discrimination and retaliation claims where, as here, the plaintiff provides only circumstantial evidence to support his claims. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). Under this analysis, Cooper must first establish a prima facie case, which gives rise to the presumption that the defendant acted with discriminatory or retaliatory intent. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. DPA may then rebut this presumption by providing a legitimate nondiscriminatory, nonretaliatory reason for the underlying action. *Id.* Once DPA produces such a legitimate rationale, the presumption raised by the prima facie case disappears completely, and the only relevant question is whether DPA intentionally discriminated or retaliated against Cooper. *Id.* at 510–11. At this point, the burden again rests with Cooper to produce sufficient evidence to create a genuine issue of fact that either: (1) DPA's proffered reason for its action is not true, but is instead a pretext for discrimination or retaliation, or (2) DPA's reason, though true, is only one of the reasons for its conduct and

that another "motivating factor" was Cooper's race or protected activity.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

### III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL OF COOPER'S CLAIMS

#### A. Cooper's Claim Against White Is Redundant

Cooper asserts his Title VII claim against both the DPA and White, whom Cooper has sued in his official capacity as President of the DPA.  The Fifth Circuit, however, has held that Title VII does not permit a plaintiff to "maintain an action against both a corporation and its agent in an official capacity."  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (quoting *Allen v. Tulane Univ.*, 1993 WL 459949 (E.D. La. Nov. 2, 1993).  Rather, "Congress's purpose in extending the definition of employer to encompass an agent . . . was simply to incorporate *respondeat superior* liability into Title VII.  Thus, a Title VII suit against an employee is actually a suit against the corporation."  *Id.*  As a result, a plaintiff may maintain an action against both an employer and its agent only when the agent is sued in his personal capacity; otherwise, the employer "could be held liable twice for the same act."  *Id.*  This reasoning applies equally to a labor organization and its president.  Cooper does not assert a claim against White personally; he only asserts a claim against White in his official capacity as President of the DBA.  Accordingly, the Court dismisses Cooper's claim against White as redundant.

### B. Cooper Failed to Exhaust Administrative Remedies
### with Respect to his Race Discrimination Claim

The DPA maintains that Cooper failed to exhaust his administrative remedies with respect to his discrimination claim and, therefore, he may not pursue that claim in federal court.  The Court agrees.

As a precondition to filing suit in federal court, Title VII requires an employee claiming discrimination or retaliation to exhaust his administrative remedies. *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).  "Exhaustion occurs when the employee files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* at 379.  The scope of the Title VII lawsuit is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the allegations contained in the charge.  *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000).

Cooper has not exhausted the administrative remedies available for his race discrimination claim.  Cooper's EEOC charge alleges only that the DPA retaliated against him for opposing alleged unlawful acts; the charge made no mention of race discrimination, nor did it provide any factual allegations that would lead the EEOC to investigate a charge of race discrimination.  Cooper argues that the EEOC charge put the DPA on notice of the promotions about which Cooper complains, and that the DPA knew that each position was filled with a Hispanic or African-American individual.  However, this does not satisfy Cooper's obligation to exhaust his administrative remedies by making a specific charge of race discrimination with the EEOC.  *See Randel v. U.S. Dep't of Navy,* 157 F.3d 392, 395 (5th Cir. 1998) (holding that plaintiff must independently exhaust his administrative remedies

for his discrimination claim when the plaintiff's EEOC charge of reprisal made no mention of race discrimination).  The Court therefore grants Defendants' motion for summary judgment with respect to Cooper's race discrimination claim because he has failed to exhaust administrative remedies.

### C. Cooper Fails to Establish a Prima Facie Case of Retaliation

The DPA argues that Cooper has not established a prima facie case retaliation and, therefore, the Court should grant summary judgment as to Cooper's claim.  The Court agrees.

Title VII prohibits a labor organization from retaliating against its members.  42 U.S.C. § 2000e-3 ("It shall be unlawful . . . for a labor organization to discriminate against any member thereof . . ., because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].").  Cooper may establish a prima facie case of retaliation by showing that: (1) he engaged in protected activity; (2) the DPA took a materially adverse action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000); *see also Peace v. Harvey*, 2006 WL 3068677, at *1 (5th Cir. Oct 26, 2006) (noting that the Supreme Court's decision in *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), relaxed the standard for "adverse employment action," but did not alter the elements of a prima facie case of retaliation).  Cooper, however, cannot sustain this initial burden because he cannot show that a causal connection exists between his support of Harold Cornish and Teresa Ward Cooper's

ORDER – PAGE 6

discrimination complaints and the fact that he was not selected for the positions of Assistant Chief and Deputy Chief.

Cooper maintains that Chief Kunkle did not select him for the positions of Assistant Chief and Deputy Chief because the DPA had intentionally damaged his reputation in retaliation for his public support of Harold Cornish and Teresa Ward Cooper's claims of discrimination.  To survive summary judgment on this claim, Cooper must offer evidence that could allow a reasonable jury to conclude that a causal connection exists between Cooper's protected activity, any action by the DPA to damage his reputation, and Chief Kunkle's decision not to promote Cooper to either position.  *See Gonzalez v. J.E. Merit Constructors, Inc.*, 263 F.3d 162, 2001 WL 803545, at *5 (5th Cir. 2001) (affirming district court's grant of summary judgment because plaintiff failed to produce evidence that "would allow a reasonable jury to infer" that a causal connection existed between the plaintiff's protected activity and his termination).

As evidence of the existence of a causal connection, Cooper points to the temporal proximity between his public support of Harold Cornish and Teresa Ward Cooper's discrimination complaints, occurring as late as October 2004, and Chief Kunkle's decision not to promote Cooper.  According to Cooper, this one-month proximity creates an inference of causation that is sufficient to establish a prima facie case of retaliation.  Generally, the "close timing between an employee's protected activity and an adverse action taken against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).  However,

ORDER – PAGE 7

in light of Chief Kunkle's deposition testimony, the Court concludes that Cooper may not

rest his case on mere temporal proximity.  In his deposition, Chief Kunkle stated that he had

sole discretion and authority to appoint officers to the positions of Assistant Chief and

Deputy Chief, and that he made those promotions based on advice from his existing

command staff.  Chief Kunkle specifically stated that he did not discuss the possibility of

Cooper's promotion with any member of the DPA and that the DPA had no influence on

whether he promoted Cooper.  Thus, in order to survive summary judgment, Cooper must

offer evidence that is sufficient to create a genuine issue of material fact as to whether the

alleged actions of the DPA did, in fact, influence Chief Kunkle's decision.

Cooper asserts that Chief Kunkle's testimony establishes that the DPA's efforts to

damage Cooper's reputation influenced Chief Kunkle's decision.  Specifically, Cooper

highlights Chief Kunkle's statements that: (1) promotions to chief positions are generally

based on an officer's reputation within the force; (2) Chief Kunkle's knowledge of Cooper

is based on Cooper's reputation; (3) Chief Kunkle does not know whether any member of

his command staff discussed Cooper with the DPA; and (4) historically, employee

associations, including the DPA, have informally "weighed in" on candidates for promotion.

However, the inference required to reach the conclusion that the DPA influenced Chief

Kunkle's decision based on these statements is too attenuated to raise a genuine issue of

material fact, especially considering that Chief Kunkle expressly disavowed any such

influence and stated that he did not discuss Cooper with anyone outside his command staff.

*Turner v. Baylor Richardson Medical Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("[A] party

ORDER – PAGE 8

cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.") (internal quotations omitted); *cf. Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1310–11 (10th Cir. 1980) (finding that testimonial evidence that defendant-union and employer were "in the matter together" and had held numerous conferences regarding the plaintiff's situation raised a genuine issue of fact as to whether defendant-union influenced employer's decision to delay plaintiff's  reinstatement).

Cooper also argues that the DPA's influence on Chief Kunkle is evident from the fact that Chief Kunkle received an allegedly racist Christmas card, which the DPA attributed to Cooper,  prior to making his decision not to promote Cooper to Deputy Chief in December 2004.  Cooper points out that when he confronted Chief Kunkle about his decision not to promote Cooper, Chief Kunkle showed Cooper the Christmas card and stated that he found it immature and unprofessional.  However, in his deposition, Chief Kunkle explained that in discussing the promotion with Cooper, he used the Christmas card as "another example" of why he did not find Cooper suitable for the position of Deputy Chief, but that the card played no role in his decision-making.  Chief Kunkle expressly stated that he would not have promoted Cooper even if he had never seen the card.  Cooper has not provided any evidence to controvert this testimony.  The Court therefore finds that Cooper has failed to raise a genuine issue of material fact as to whether the DPA influenced Chief Kunkle's decision not to promote Cooper.  Accordingly, the Court grants Defendants' motion for summary judgment with respect to Cooper's retaliation claim.

Signed June 4, 2007.

_____

David C. Godbey
United States District Judge

ORDER – PAGE 10